781 F.2d 1411
 A & A CONCRETE, INC., Kayle Adams, and Sandy Adams,
Plaintiffs-Appellants.
v.
The WHITE MOUNTAIN APACHE TRIBE, Charles A. Patterson,
Violet Patterson, Kenneth Patterson, Shirley
Patterson, et al., Defendants-Appellees.
 No. 85-2165.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 17, 1986.
Decided Feb. 6, 1986.
 
 John P. Otto, Phoenix, Ariz., for plaintiffs-appellants.
 Robert Alan Hershey, Tucson, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before SNEED, ANDERSON and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge.
 
 
 1
 Appellants A & A Concrete, Inc., Kayle Adams and Sandy Adams (collectively "appellants") appeal from the district court's grant of summary judgment in favor of appellees The White Mountain Apache Tribe (the Tribe), White Mountain Apache Development Enterprises, and individual appellees, on appellants' complaint for deprivation of civil rights, conspiracy to deprive them of their civil rights, and related pendent state tort claims. Appellants also appeal from the district court's order denying appellants' cross-motion for summary judgment predicated on res judicata and collateral estoppel grounds. Because appellants failed to exhaust their remedies in the White Mountain Tribal Court, we conclude that federal review of appellants' claims is premature and affirm.
 
 I.
 
 2
 In June 1978, Kayle Adams contracted with the White Mountain Apache Development Enterprise (an economic subsidiary of the White Mountain Apache Tribe) to supply concrete to a housing project to be constructed on the Fort Apache Indian Reservation for the use of tribal members. At the formation of the contract and throughout its term, the Tribe was represented by Charles Patterson, general manager of the Development Enterprise. Pursuant to the contract, the concrete was required to conform to certain strength standards.
 
 
 3
 In late 1978, Charles Patterson bought stolen heavy construction equipment. He and Kayle Adams were arrested. In February 1979, Adams told Patterson that he was going to testify against Patterson. Patterson threatened to kick Adams off the reservation if he did so. Adams did not testify, and Patterson was subsequently acquitted of the charge.
 
 
 4
 Sometime early in 1979, the Tribe became aware that Adams had furnished substandard concrete. The substandard character of the concrete necessitated dismantling houses built on defective foundations. The Tribe withheld payment for the materials and brought an action against appellants in the tribal court for breach of contract. Appellants contend that the tribal court lawsuit was the result of a conspiracy to retaliate against Adams for threatening to testify against Patterson.
 
 
 5
 Appellants were served with the complaint by Navajo County Sheriff's deputies Charles Lane and Gene Russell, and Russell Lupe, a Whiteriver police officer and a tribal court process server. It is unclear which of these persons actually handed Adams the tribal court documents.
 
 
 6
 Upon the advice of counsel, appellants ignored the service of process and allowed the time to answer to lapse. Appellants did not enter a special appearance in tribal court or otherwise attempt to challenge the tribal court's jurisdiction. On February 6, 1980, the tribal court entered a default judgment against appellants in the amount of $250,000 plus costs and interest.
 
 
 7
 Pursuant to a writ of execution, the Chief of Police of the Whiteriver Police Department levied on two pieces of equipment belonging to appellants. The Development Enterprise purchased both items of equipment at the court-ordered sale. On the advice of counsel, appellants entered the reservation in September 1980 and removed one of the pieces of equipment.
 
 
 8
 Kayle Adams was thereafter indicted in federal district court for theft of tribal property. These charges were dismissed by Judge James A. Walsh in December 1980, on the ground that the tribal court lacked jurisdiction to enter the default judgment in the civil suit against Adams.
 
 
 9
 On November 15, 1979, appellants filed a first amended complaint in district court against the Tribe, doing business as White Mountain Apache Enterprises, the White Mountain Apache Housing Authority (charged with administering housing construction on the reservation), Charles Patterson, and a number of other individual defendants. The complaint alleged (1) conspiracy to deprive the plaintiffs of their civil right to due process; (2) deprivation of civil rights; (3) wrongful garnishment and levy of execution; (4) breach of contract; and (5) unlawful interference with plaintiffs' contract with a third party, Okland Construction. The complaint was dismissed for want of jurisdiction on February 29, 1980. On appeal, this court affirmed the dismissal of the complaint with respect to the second count and reversed and remanded the case with respect to the remaining claims. A & A Concrete, Inc. v. White Mountain Apache Tribe, 676 F.2d 1330 (9th Cir.1982) (A & A Concrete I ). The White Mountain Apache Housing Authority was subsequently dismissed as a party with prejudice.
 
 
 10
 On February 22, 1985, appellees moved for summary judgment. Appellants filed a cross-motion for summary judgment. On May 13, 1985, the district court granted appellees' motion and denied appellants' cross-motion.
 
 II. STANDARD OF REVIEW
 
 11
 We review a district court's grant of summary judgment de novo. Grigsby v. CMI Corp., 765 F.2d 1369, 1373 (9th Cir.1985). We apply the same standard as that employed by the trial court under Fed.R.Civ.P. 56(c): we will affirm only if the record, read in the light most favorable to the non-moving party, reveals no genuine issues of material fact and establishes that the moving party is entitled to judgment as a matter of law. Id.
 
 
 12
 The district court's decision to deny appellants' cross-motion for summary judgment is also reviewable de novo: whether res judicata or collateral estoppel operates to bar claims is a mixed question of law and fact subject to de novo review. United States v. Geophysical Corp., 732 F.2d 693, 697 (9th Cir.1984).
 
 III. APPELLEES' MOTION FOR SUMMARY JUDGMENT
 
 13
 Appellees assert three grounds in support of the district court's summary judgment award: (1) appellants failed to exhaust their remedies in tribal court and federal review is thus premature; (2) the Tribe and its employees are immune from suit; and (3) appellants have not established the existence of state action on their section 1983 claim. The district court did not specify the ground on which it granted summary judgment. We may affirm the district court on any basis fairly supported by the record. Hoohuli v. Ariyoshi, 741 F.2d 1169, 1177 (9th Cir.1984) (citing Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984); United States v. 101.80 Acres of Land, 716 F.2d 714, 727 n. 24 (9th Cir.1983)). Because we conclude that summary judgment was proper on the first ground, we do not reach the second and third grounds proferred by appellees.
 
 
 14
 Appellants contend that they were excused from their obligation to exhaust their remedies in tribal court because the tribal court lacked subject matter jurisdiction to hear the instant dispute. Appellants argue that the question whether the tribal court had jurisdiction to hear the dispute is a federal question which must be resolved by the district court.
 
 
 15
 The Supreme Court addressed this issue in National Farmers Union Insurance Companies v. Crow Tribe, 471 U.S. ---, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). In National Farmers, a Crow Indian obtained a default judgment in tribal court against a school district located within the Crow reservation for damages sustained when he was struck by a motorcycle in the school parking lot. Id., 105 S.Ct. at 2449. The school district and its insurer brought an action for injunctive relief in district court, invoking the court's federal question jurisdiction under 28 U.S.C. Sec. 1331. Id. at 2450. The district court held that the tribal court "lacked subject-matter jurisdiction over the tort that was the basis of the default judgment," and entered an injunction against execution of the tribal court judgment. Id. We reversed without reaching the merits, finding that the district court's exercise of jurisdiction could not be supported on any constitutional, statutory, or common law ground. Id. at 2450 & n. 3.
 
 
 16
 The Supreme Court held that the district court had jurisdiction under section 1331 over the federal question whether the tribal court had the power to compel a non-Indian property owner to submit to the jurisdiction of the tribal court, see id. at 2452; however, the existence and extent of a tribal court's jurisdiction requires an examination which "should be conducted in the first instance in the Tribal Court itelf." Id. at 2454. The Court opined that Congress' commitment to a policy of supporting tribal self-government and self-determination favors a rule "that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." 105 S.Ct. at 2454 (footnote omitted). The Court commented:
 
 
 17
 [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.
 
 
 18
 Id. (footnote omitted). The Court reasoned that if such an examination were performed by the tribal court, a full record could be developed and other courts would benefit from the tribal court's expertise in the event of further judicial review. Id. Because the issue "[w]hether the federal action should be dismissed, or merely held in abeyance pending the development of further Tribal Court proceedings, is a question that should be addressed in the first instance by the District Court," the Supreme Court remanded the case to the district court. Id. at 2455.
 
 
 19
 National Farmers makes no distinction between personal injury actions and other civil matters arising within the territory governed by the tribe. See id. at 2452. The Supreme Court has repeatedly recognized that tribal courts have inherent power to adjudicate civil disputes affecting the interests of Indians and non-Indians which are based upon events occurring on the reservation. See, e.g., Montana v. United States, 450 U.S. 544, 566, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 65, 98 S.Ct. 1670, 1680, 56 L.Ed.2d 106 (1978); accord, Hardin v. White Mountain Apache Tribe, 779 F.2d 476, 479 (9th Cir.1985) (as amended); Snow v. Quinault Indian Nation, 709 F.2d 1319, 1321 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984).
 
 
 20
 It is undisputed that the transactions which form the bases for appellants' claims occurred or were commenced on tribal territory. We have previously held that a tribal court has initial power to determine its own jurisdiction to attach property belonging to a non-Indian during a building warranty dispute involving housing built on the reservation and paid for by the tribe's representative. See R.J. Williams Co. v. Fort Belknap Housing Authority, 719 F.2d 979, 985 (9th Cir.1983) (fact that contract involved housing to be built on the reservation, to be occupied by reservation members and paid for by an agency representing the tribe, established reservation as locus of contract dispute), cert. denied, --- U.S. ----, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); see also Babbitt Ford, Inc. v. Navajo Indian Tribe, 710 F.2d 587, 592-95 (9th Cir.1983) (court upheld tribe's right to regulate conduct of automobile dealer on tribal lands in repossessing vehicles purchased by Indians off the reservation), cert. denied, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984).
 
 
 21
 Appellants nevertheless argue that this case falls within the narrow exception to the exhaustion requirement which the Court outlined in a footnote to the National Farmers case:
 
 
 22
 We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction "is motivated by a desire to harass or is conducted in bad faith," ... or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.
 
 
 23
 105 S.Ct. at 2454 n. 21 (citation omitted).
 
 
 24
 Appellants first maintain that the instant action is patently violative of express jurisdictional prohibitions contained in the Tribal Law and Order Code. Chapter II, section 21.1 of the Code provides: "The Tribal Court of the White Mountain Apache Tribe shall have jurisdiction over all suits wherein an Indian or a member of the White Mountain Apache Tribe is a party." Appellants argue that because the Tribe itself brought the action in Tribal Court and it is neither an "Indian" or "a member of the ... Tribe," the tribal court lacked jurisdiction. Appellants cite Wilson v. Omaha Indian Tribe, 442 U.S. 653, 667, 99 S.Ct. 2529, 2537, 61 L.Ed.2d 153 (1979) in support of the proposition that the word "person" does not include a sovereign entity. Appellants' reliance on Wilson is misplaced. In fact, Wilson supports the Tribe's construction of the Code.
 
 
 25
 In Wilson, the Supreme Court construed 25 U.S.C. Sec. 194, which provides: "In all trials about the right of property in which an Indian may be a party on one side, and a white person on the other, the burden of proof shall rest upon the white person...." Although the Court did find that the term "white person" did not include the sovereign, it also squarely rejected the argument that the statute does not apply when an Indian tribe, rather than one or more individual Indians, is the litigant. Id. at 665, 667, 99 S.Ct. at 2536, 2537. The Court noted that statutes passed for the benefit of Indian tribes are to be liberally construed, with doubtful expressions being resolved in favor of the Indians. Id. at 666, 99 S.Ct. at 2537.
 
 
 26
 Moreover, the "[i]nterpretation of a tribal ordinance is one of the duties of a tribal court." R.J. Williams Co., 719 F.2d at 983 (holding that question whether Fort Belknap Housing Authority is a "member" of the Fort Belknap Indian Community as that word is used within tribal court jurisdictional statute is a matter for the tribal court). Appellants' arguments regarding the tribal legislature's intent are better addressed to the tribal court. See id. at n. 4.
 
 
 27
 Appellants next assert that exhaustion would have been futile because they would not have been afforded a meaningful opportunity to challenge the tribal court's jurisdiction. Specifically, appellants argue that Anna Goseyun, Chief Judge of the tribal court, was so lacking in adequate legal training and biased by her connection with the tribal council that a hearing over which she presided would violate due process standards.
 
 
 28
 Appellants' failure to challenge Goyesun for bias or on competence grounds precludes them from raising this question in the federal courts. Section 14.7(c) of the Tribal Code permits any party to challenge a tribal court judge's qualification to hear the case. Appellants' failure to raise such a challenge because they assumed that it would be unsuccessful is not equivalent to raising the issue and having it resolved against them. See White v. Pueblo of San Juan, 728 F.2d 1307, 1313 (10th Cir.1984) (plaintiffs' failure to seek tribal remedies because of their belief that none existed is not equivalent of pursuing the remedy; speculative futility does not justify federal jurisdiction); Galella v. Onassis, 487 F.2d 986, 997 (2d Cir.1973) (failure to comply with disqualification procedures of 28 U.S.C. Sec. 144 because of expectation of denial, however well-founded, cannot be substituted for compliance). Appellants cannot avoid the plain import of the Supreme Court's decision in National Farmers in this manner.
 
 
 29
 Finally, appellants argue that exhaustion was not required under National Farmers because the tribal court action was motivated by a desire to harass. This exception to the exhaustion requirement, however, may not be utilized unless it is alleged and proved that enforcement of the statutory scheme was the product of bad faith conduct or was perpetuated with a motive to harass. See National Farmers, 105 S.Ct. at 2454 n. 21 (citing Juidice v. Vail, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977)). No such proof appears in the record.
 
 
 30
 This case does not fall within any of the exceptions to the exhaustion requirement. Because the district court has already determined that dismissal rather than abeyance of the federal case is appropriate, we need not remand the case to the district court. Summary judgment in favor of the Tribe was properly granted.
 
 
 31
 IV. APPELLANTS' CROSS-MOTION FOR SUMMARY JUDGMENT[1]
 
 
 32
 Appellants also contend that they were entitled to summary judgment on res judicata or collateral estoppel grounds: they argue that Judge Walsh's decision in United States v. Adams that the tribal court lacked jurisdiction to enter the default judgment in the Tribe's civil suit against Kayle Adams precludes relitigation of that question. We disagree.
 
 
 33
 The doctrines of res judicata and collateral estoppel operate to preclude relitigation of claims or issues in a subsequent action between the same parties or those in privity with them. 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice p 0.405, at 178 (2d ed. 1984). While collateral estoppel may in some cases be available to estop a party to a prior proceeding from denying what was there judicially determined, such a judgment cannot be pleaded offensively against a non-party to the prior action by one who was a party. See id. p 0.411, at 387.
 
 
 34
 In the instant case, the Tribe was not a party to the criminal action against Adams. We have held that a person technically not a party to the prior action may be bound by the prior decision only "if his interests are so similar to a party's that the party was his 'virtual representative' in the prior action." United States v. Geophysical Corp., 732 F.2d at 697 (quoting United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir.1980)). Appellants have produced no evidence to show that the United States was the "virtual representative" of the Tribe in the criminal action, or indeed, that the Tribe had the right to participate in or control Adams' criminal prosecution. See American Safety Flight Systems, Inc. v. Garrett Corp., 528 F.2d 288, 289 (9th Cir.1975) (non-party cannot be estopped to relitigate issues involved in an earlier suit unless he had "the right to participate and control such prosecution or defense").
 
 
 35
 Appellants' contention that the law of the case doctrine bars relitigation of the question of the tribal court's jurisdiction is equally meritless. Under the law of the case doctrine, a court is precluded from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case. United States v. Maybusher, 735 F.2d 366, 370 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). In the instant matter, the doctrine is inapposite; appellants seek to apply Judge Walsh's decision made in a different case.
 
 
 36
 The district court properly denied appellants' cross-motion for summary judgment.
 
 V. CONCLUSION
 
 37
 The existence and extent of a tribal court's jurisdiction in a civil action involving an Indian and a non-Indian requires an examination which should be conducted in the first instance by the tribal court itself. Appellants' failure to exhaust their remedies in tribal court is not excused under any of the exceptions outlined by the Supreme Court in National Farmers. Because the Tribe was not a party to the criminal action against Adams and appellants have not demonstrated that the United States was the "virtual representative" of the Tribe in that action, principles of res judicata and collateral estoppel do not operate to preclude relitigation by the Tribe in tribal court of the question whether the tribal court had jurisdiction to enter a default judgment against appellants.
 
 
 38
 The judgment is AFFIRMED.
 
 
 
 [1]
 Although the existence of a cross-motion for summary judgment would ordinarily imply agreement between the parties that there are no disputed issues of fact, in the instant case the cross-motion is actually an alternative argument. Appellants' position is that (1) they are entitled to summary judgment on res judicata/collateral estoppel grounds; or (2) if res judicata is not applicable, they have raised issues of material fact which make summary judgment inappropriate