**STOCK WEST CORPORATION,**
**an Oregon corporation,**
**Plaintiff–Appellant,**

v.

**Michael TAYLOR, Defendant–Appellee.**

**No. 90–35201.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted En Banc March 19, 1992.

Decided May 18, 1992.

---

913

Barbee B. Lyon, Tonken, Torp, Galen, Marmaduke & Booth, Portland, Or., for plaintiff-appellant.

Alan C. Stay, Colville Confederated Tribes, Nespelem, Wash., for defendant-appellee.

Before: WALLACE, Chief Judge, and PREGERSON, ALARCON, D.W. NELSON, HALL, THOMPSON, O'SCANNLAIN, LEAVY, TROTT, FERNANDEZ, and T.G. NELSON, Circuit Judges.

ALARCON, Circuit Judge:

Stock West Corporation ("Stock West") appeals from the dismissal of this action by the district court for lack of jurisdiction and because the claims are barred by tribal sovereign immunity. We affirm the dismissal of this action because we conclude that the district court did not abuse its

discretion in abstaining from the exercise of its jurisdiction in this matter pending the presentation of Stock West's claim to the Colville Tribal Court. We vacate that portion of the judgment holding that Michael Taylor was protected by sovereign immunity for his conduct as Reservation Attorney for the Confederated Tribes of the Colville Reservation ("Colville Tribes").

## I.

### Procedural and Factual Background

Before analyzing the legal questions presented in this appeal, we must set forth the genesis of this prolonged and multifaceted dispute in some detail. In 1983, James F. Stock was invited to the reservation by the Colville Tribes to discuss the construction of a sawmill on tribal lands. Mr. Stock agreed that he would prepare a design and a marketing plan for a tribal sawmill. A document entitled "Professional Services Agreement" was signed by Mr. Stock and a representative of the Colville Tribes on January 20, 1984. After receiving and reviewing Mr. Stock's proposal, the Colville Tribes decided to proceed with the project.

Stock West was incorporated in the State of Oregon on February 27, 1984, for the purpose of constructing and managing the Colville Tribes sawmill. Mr. Stock was selected as the chairman of the board and chief executive officer of Stock West. Stock West proposed the drafting of a contract for the construction of the sawmill and a second agreement for the management and marketing of its products. The parties agreed that the Colville Tribes would create two governmental corporations to enter into the contracts with Stock West. The Tribal Governmental Corporations Act, Title 25 of the Colville Tribal Code, was adopted to carry out this proposal.

The Colville Tribes created the Colville Tribal Enterprise Corporation ("CTEC") to conduct business activities for the economic advancement of tribal members, and to build the sawmill. The Colville Indian Pre-

cision Pine Company ("CIPP"), was organized for the purpose of operating the sawmill. Stock West was given the power to approve three members of CIPP's five member board of directors. Mr. Stock was made a director and the President of CIPP.

Stock West retained Johnson, Marceau, Karnopp, and Petersen, a Bend, Oregon law firm, to represent it in the negotiations with the Colville Tribes. James Noteboom, of the Johnson firm, wrote to Mr. Taylor on April 24, 1984, requesting that he "make sure that we obtain Bureau approvals where needed" pursuant to the provisions of 25 U.S.C. § 81.[1]

On July 23, 1984, Mr. Stock, on behalf of Stock West, and a tribal representative, acting for CTEC and CIPP, executed the Construction Management Agreement ("CMA") and the Management Marketing Agreement ("MMA"). These contracts were signed on the reservation.

Under the CMA, Stock West agreed to manage and supervise all phases of the construction of the sawmill. Stock West maintained an office on the reservation for this purpose. It was agreed that the actual construction was to be performed by tribal members or contractors. Construction of the sawmill was substantially completed by February 1986.

Mr. Taylor was the senior attorney in the office of the Reservation Attorney for the Confederated Tribes of the Colville Reservation. As such, Mr. Taylor was the chief legal officer for the Colville Tribes. Mr. Taylor was appointed to serve as counsel for CTEC and CIPP by the Colville Tribes through its Colville Business Council.

On July 27, 1984, Mr. Noteboom transmitted copies of the CMA, and the Articles of Incorporation of the CTEC and the CIPP to Arthur Biggs, the Assistant Regional Solicitor for the Department of Interior to give him "a little headstart in your review." On August 2, 1984, Mr. Taylor sent copies of the MMA and the CMA to George Davies, the Superintendent of the Colville Indian Agency, for his review.

---

1. Section 81 provides in pertinent part that "[n]o agreement shall be made ... with any tribe of Indians, or individual Indians ..." without the approval of the Secretary of the Interior.

On September 28, 1984, Mr. Biggs informed Wilfred Bowker, Assistant Area Director, Program Services of the Bureau of Indian Affairs ("BIA") that:

in our opinion, 25 U.S.C. § 81 does not require the Bureau to approve these agreements as they are not made with a "tribe of Indians or individual Indians" covered by that statute but are made with a corporate entity having its own legal status separate and apart from that of the tribe which chartered it.

On October 10, 1984, Mr. Taylor sent a memorandum to the BIA Forest Manager in which Mr. Taylor stated: "I believe that the Bureau would be justified in reviewing the contracts for approval because when any entity is dealing with CTEC or CIPP, that entity is dealing with the Tribes." A copy of this memorandum was sent to Mr. Stock, and to James Pierce, who had been appointed by Stock West as a board member and general manager of CIPP.

On December 7, 1984, Mr. Bowker transmitted a memorandum to the Superintendent of the Colville Agency in which he expresses the following conclusions:

Bureau approval of the two agreements between Stock West Corporation, CTEC, and CIPP is not required by 25 USC Section 81. Further, I believe that such approval is not desirable since it would cause unnecessary Bureau intrusion into the business activities of the tribal corporations.

Stock West did not file an appeal from the BIA's determination that Section 81 did not require its approval of the contracts.

In July 1985, Stock West informed the Colville Tribes that it could obtain financing for the construction of the sawmill from the United Savings Bank, Mutual of Salem, Oregon ("United Savings Bank"). At United Savings Bank's request, Mr. Taylor prepared an opinion as legal counsel for the tribal corporations, regarding the authority of CTEC and CIPP to enter into a loan agreement with the approval of the Secretary of the Interior. Mr. Taylor's opinion was researched, drafted, and signed on the Colville Reservation. In his letter to the United Savings Bank, Mr. Taylor opined that:

[n]o consent, approval or authorization of or registration, declaration or filing with any governmental or public body or authority is required to construct the Project or operate the Mill, or if required, such consent, approval, order or authorization has been obtained.

Listed among the documents relied upon by Mr. Taylor in forming his opinion was the December 7, 1984 decision of the Assistant Area Director of the Portland, Oregon office of the BIA Branch of Forestry.

On July 10, 1985, Mr. Taylor traveled to Portland, Oregon to deliver his written opinion and to close the loan. Mr. Stock signed the loan agreement on behalf of the borrowers, as President of CIPP. Mr. Pierce also signed as the General Manager and Corporate Secretary of CTEC. Stock West was not a party to the loan agreement. Pursuant to the loan agreement, United Savings Bank loaned 6.6 million dollars to CTEC and CIPP to finance the construction of the sawmill.

The following year, the Colville Tribes concluded that Stock West had failed to perform its contractual duties. On July 15, 1986, CTEC and the Colville Business Council served a notice of default on Stock West. Stock West demanded that the matter be submitted to arbitration. The Colville Tribes refused to agree to arbitration, or to make any further payments to Stock West. CTEC and CIPP advised Stock West that the contracts had been terminated.

On July 30, 1986, the Colville Tribes, the Colville Business Council, CTEC, and CIPP filed an action in the Colville Tribal Court for declaratory and injunctive relief, as well as for recoupment of monies paid to Stock West. On August 17, 1987, the Colville Tribal Court ruled that it had subject matter jurisdiction over the dispute. *Confederate Tribes of the Colville Reservation v. Stock West, Inc.*, 14 Indian L.Rptr. 6025 (Colville Tribal Ct. Aug. 17, 1987). The Colville Tribal Court also ruled that the agreements were void for lack of BIA approval under Section 81. *Confederated*

*Tribes of the Colville Reservation v. Stock West Inc.,* 15 Indian L.Rptr. 6019 (Colville Tribal Ct. May 2, 1988).

On April 7, 1987, Stock West filed an action to compel arbitration against the Colville Tribes in the United States District Court for the Eastern District of Washington. The district court dismissed the action out of deference to the Colville Tribal Court's concurrent jurisdiction under the principle of comity. We affirmed in *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221 (9th Cir.1989). We concluded that it was proper for the district court to abstain from exercising its concurrent jurisdiction as a matter of comity. *Id.* at 1229–30.

Stock West attempted to obtain the BIA's retroactive approval of its agreements with the Colville Tribes on two occasions. The first attempt was denied by the BIA on July 21, 1987. Stock West did not file an administrative appeal. After the Colville Tribal Court ruled that the contracts were void, Stock West appealed to the Interior Board of Indian Appeals. The appeal was dismissed as untimely. *Stock West, Inc. v. Portland Area Director, Bureau of Indian Affairs,* No. IBIA 89–26–A, 18 IBIA 7 (Oct. 5, 1989).

On September 8, 1989, Stock West filed this action against Mr. Taylor. The complaint alleges that Mr. Taylor is liable for legal malpractice and false representation. Stock West alleges that in drafting his July 10, 1985 letter to United Savings Bank, Mr. Taylor failed to exercise reasonable care in reaching his opinion that the contracts were enforceable and falsely represented that it was his view that BIA approval of the agreements to manage the construction and operation of the sawmill was not required. The complaint further alleges that Mr. Taylor transmitted a copy of the letter to Stock West intending that it rely on his representation that BIA approval was not necessary. Stock West asserts that it relied on Mr. Taylor's false representations and suffered monetary damages.

Mr. Taylor filed a motion to dismiss Stock West's action for (1) lack of jurisdiction over the subject matter pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (2) lack of personal jurisdiction under Rule 12(b)(2), and (3) "principles of comity." In a separate written document filed on the same date, Mr. Taylor moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Mr. Taylor also moved for a summary judgment on alternative grounds. First, Mr. Taylor contended that he is entitled to judgment as a matter of law because Stock West cannot prove the claims of legal malpractice and misrepresentation. Second, Mr. Taylor asserted that Stock West's claims are barred by "the doctrines of official immunity and/or sovereign immunity." Mr. Taylor also moved to dismiss this action pursuant to Rule 19 for failure to join indispensable parties.

The district court conducted a hearing on Mr. Taylor's motions on December 12, 1989. At the outset of the proceedings, the district court informed counsel that it was going to deny the motion to dismiss for lack of diversity jurisdiction and the motion to dismiss for lack of personal jurisdiction. The court also stated that it would deny the Rule 12(b)(6) motion to dismiss for failure to state a claim and the motion for a summary judgment because discovery had not been completed.

The district court asked counsel to limit their argument to the question whether it should decline to exercise its jurisdiction at this time as matter of comity and whether Mr. Taylor was immune from liability under the laws and regulations of the Colville Tribes. After hearing from counsel, the court adjourned the hearing without announcing its ruling on the remaining motions.

On January 29, 1990, the district court filed its opinion in this matter. In the concluding paragraph, the court stated that it granted "defendant's motions to dismiss based on lack of jurisdiction (# 6) and defendant's immunity from suit (part of # 4)." *Stock West Corp. v. Taylor,* 737 F.Supp. 601, 605 (D.Or.1990). In the body of its opinion, however, the district court reasoned that "principles of comity require me to decline to exercise jurisdiction over

the dispute until plaintiff has exhausted its tribal court remedies." *Id.*

The district court denied Mr. Taylor's Rule 12(b)(6) motion to dismiss for failure to state a claim and the motion for a summary judgment as moot. The district court concluded that it was unnecessary to rule on Mr. Taylor's motions for a dismissal for lack of personal jurisdiction and for the failure to join indispensable parties because of its "findings of lack of jurisdiction and immunity from suit." *Id.*

## II.

### Discussion

#### A. *Subject Matter Jurisdiction*

■ Stock West contends that the district court had diversity jurisdiction over this action. In its published opinion, the district court did not discuss Mr. Taylor's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). At the hearing conducted on December 12, 1989, however, the district court orally denied the motion to dismiss for lack of diversity jurisdiction. The court explained that the motion "is not at that point where I'm content that I'm going to make that decision at this time."

■ Mr. Taylor argues that the district court did not have diversity jurisdiction because the record shows that Stock West's principal place of business was on the Colville Tribes reservation in the state of Washington. We must resolve this dispute before we can consider the issues raised in this appeal by Stock West. If the district court did not have subject matter jurisdiction, it lacked the power to enter an abstention order, or to rule on the merits of the immunity defense.

■ We review *de novo* a district court's determination regarding its jurisdiction over the subject matter, without deference to the district court's decision on this question. *Mobil Oil Corp. v. City of Long Beach,* 772 F.2d 534, 538 (9th Cir.1985). It is undisputed that the Colville Tribes terminated Stock West's business operations on its tribal lands within the state of Washington on July 15, 1986. Mr. Taylor's declaration states as follows: "To my knowledge, Stock West has undertaken no new business since it was terminated by CTEC and CIPP. As far as I know, Stock West's only activity since July of 1986 has been participating in the Tribal Court Litigation and filing two lawsuits against me."

This action was filed on September 15, 1989. Subject matter jurisdiction is determined on the basis of the facts that existed at the time the action was filed. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989); *Co–Efficient Energy Systems v. CSL Industries, Inc.,* 812 F.2d 556, 557 (9th Cir.1987). Because Mr. Taylor is a citizen of the state of Washington, and Stock West is an Oregon corporation, complete diversity existed on the date this action was filed.

We recognize that the district court stated that the action was dismissed for lack of jurisdiction. 737 F.Supp. at 602, 605. We also note, however, that in explaining its ruling, the district court in an apparent contradiction stated that it was compelled to decline to exercise its jurisdiction over this matter because of "principles of comity." *Id.* at 605. The record demonstrates that the district court in fact had subject matter jurisdiction over the parties' dispute based on diversity of citizenship.

#### B. *Abstention Based on Principles of Comity*

■ Stock West argues that the district court erred in concluding that "principles of comity require me to decline to exercise jurisdiction over the dispute until plaintiff has exhausted its tribal court remedies." 737 F.Supp. at 605. The decision to abstain "involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964). *See also Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941) (the use of the equitable power to restrain their authority "is a contribution of the courts in furthering the harmonious relation between state and federal authority").

■ A district court abuses its discretion if its decision is based on an erroneous interpretation of the law or its findings of fact are clearly erroneous. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *In re Qintex Entertainment, Inc.*, 950 F.2d 1492, 1498 (9th Cir.1991). The facts necessary to resolve the question whether Stock West's claims implicate tribal sovereignty are not in dispute. The Colville tribes negotiated with Mr. Stock, a non-Indian, for the design, construction, and management of a sawmill on reservation land. Mr. Stock incorporated Stock West for the purpose of constructing and managing the sawmill. Mr. Stock became Stock West's chief executive officer and board chairman. Stock West conducted its business on tribal land. Mr. Stock also became the president of one of the tribal corporations organized to operate the sawmill. In this capacity, Mr. Stock served as an agent of a Colville Tribes government corporation. Mr. Stock was a party to the loan transaction as President of CIPP, not in his capacity as the chief operating officer of Stock West.

Mr. Taylor is also a non-Indian. He is a resident of the state of Washington. He is licensed to practice law in that state. He is the Reservation Attorney for the Colville Tribes. He also serves as counsel for CTEC and CIPP.

Mr. Taylor researched and drafted his opinion regarding the applicability of Section 81 in his office on the Colville Tribes Reservation. Mr. Taylor negotiated the loan from his office on tribal land. The only event in these commercial transactions that occurred off the reservation was the delivery of Mr. Taylor's opinion letter at the meeting to close the loan in the United Savings Bank office in Portland, Oregon.

Stock West appears to argue that the Colville Tribes have no jurisdiction over this tort action between non-Indians because Mr. Taylor's alleged malpractice and misrepresentations were made in a letter delivered to Stock West representatives in Portland, Oregon—not on reservation land. Stock West also contends that "Judge Marsh appears to conclude ... that the claim arose on the reservation and did not arise in Oregon. He does so by focussing (sic) only on where the letter was drafted. He pays no attention to where the letter was delivered." Appellant's Opening Brief at 7–8.

Contrary to Stock West's contention, the district court did not dismiss this action because it concluded that it did not have subject matter jurisdiction over Stock West's claims. Instead, the district court stated the question before it as follows: "Thus, the issue presented is whether *the Colville Tribal Court may have jurisdiction* over plaintiff's claims." 737 F.Supp. at 604 (emphasis added). In addressing this issue, the district court stated: "I reject plaintiff's contention that the tribal court lacks jurisdiction over the claims alleged because both parties are non-Indians and because the cause of action arose in Oregon outside the Indian Reservation." *Id.* As discussed above, the district court did not rule that it lacked diversity jurisdiction over plaintiff's tort claims. It held that because "the subject matter of the letter involves tribal concerns," it was required to abstain until Stock West exhausted its tribal court remedies. *Id.* By abstaining, the court left to another day the question whether Stock West has stated, or can prove, a cognizable tort claim under Oregon law.

■ The fact that Stock West is a non-Indian corporation does not preclude the Colville tribes from exercising civil jurisdiction in this matter. In *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the Court instructed that Indian tribes possess "inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." *Id.* at 565, 101 S.Ct. at 1258. The Court explained that:

[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exer-

cise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* at 565–66, 101 S.Ct. at 1258 (citations omitted).

In *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Supreme Court held that a district court should order a stay, or dismiss the action, notwithstanding the fact it has subject matter jurisdiction over a civil action against a non-Indian, to permit a tribal court to determine in the first instance whether it has the power to exercise subject-matter jurisdiction in a *civil* dispute between Indians and non-Indians that arises on an Indian reservation. *Id.* at 854–57, 105 S.Ct. at 2452–54.

The Court reasoned in *National Farmers Union* that:

the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.

*Id.* at 855–56, 105 S.Ct. at 2453–54 (footnote omitted).

The Court also stated that an "orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." *Id.* at 856, 105 S.Ct. at 2454.

The Court observed that:

[t]he risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis

for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*Id.* at 856–57, 105 S.Ct. at 2454 (footnotes omitted).

In *A & A Concrete, Inc. v. White Mountain Apache Tribe,* 781 F.2d 1411 (9th Cir.) *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986), a panel of this court held that the abstention doctrine set forth in *National Farmers Union* is applicable in a civil action involving reservation affairs. *Id.* at 1415–16.

Stock West's strongest argument is that abstention was improper because the letter opinion was delivered to Stock West off the reservation. The undisputed facts show that the opinion letter was researched and drafted on the Colville Tribes' reservation. The letter was necessary to qualify the tribal corporation for a loan to build a sawmill on the reservation. Mr. Taylor, although a non-Indian, was the Reservation Attorney for the Colville Tribes and counsel for CTEC and CTPP when he drafted the letter opinion. The loan agreement was negotiated on tribal land. Mr. Stock signed the loan agreement as president of a tribal corporation. Based on these facts, we conclude that the record presents a colorable question whether the alleged malpractice and false representations arose out of a contractual relationship between Stock West and the Colville Tribes that commenced on tribal lands. By colorable we mean that on the record before us, the assertion of tribal court jurisdiction is plausible and appears to have a valid or genuine basis. *See id.* at 1416 (a tribal court has the initial power to determine its own jurisdiction where the undisputed facts show that "the transactions which form the bases for appellants' claims occurred or were commenced on tribal territory").

Stock West also appears to argue that the alleged torts did not arise on the reservation because reliance on the representations and the resultant harm did not occur until the opinion letter was delivered to Mr. Stock. As noted above, the facts show that the opinion letter was researched and draft-

ed on the reservation with the intent to persuade the bank to approve a loan so that Stock West could be paid to perform its services on the reservation. Whether Colville Tribal law applies to a tort that involved certain acts committed on reservation land and other acts committed outside its territorial jurisdiction to induce another to perform a contract on tribal lands presents a colorable question that must be resolved in the first instance by the Colville Tribal Courts. Section 148(f) of the Restatement (Second) of Conflict of Laws provides that a factor to be considered in determining the proper forum for an action for fraud and misrepresentation is "the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." Restatement (Second) of Conflict of Laws § 148(f) (1988). Abstention in this matter will permit the Colville Tribal Courts to explain whether this principle is a part of its statutory or common law.

This case also presents colorable questions concerning whether an action against Mr. Taylor for acts committed as Reservation Attorney, or as counsel for the tribal corporations is "barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, — U.S. —, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (same). Colville Law & Order Code § 1.1.06 provides that the Tribes' "officers and employees shall be immune from suit for any liability arising from the performance of their official duties." Whether this statute protects Mr. Taylor, who is a non-Indian, from suit for his work as counsel for two tribal corporations is a matter that requires an interpretation of legislative intent that should be conducted in the first instance by the Colville tribal courts.

Based on our independent review of the applicable law governing the duty of a federal court in cases involving concurrent jurisdiction over civil matters arising out of business transactions commenced on tribal lands, we hold that the district court correctly ruled that it was required to abstain from exercising its diversity jurisdiction over this tort action until the Colville Tribal Courts have resolved the substantial questions of tribal sovereignty presented by the facts in this case. The district court did not abuse its discretion in dismissing this action as a matter of comity.

## C. *Disposition of Immunity Defense*

■ As an alternative ground for the dismissal of this action, the district court concluded that "as senior attorney in the Office of the Reservation Attorney and chief legal official for the Colvilles," Mr. Taylor was immune from suit under Colville Tribal Law. 737 F.Supp. at 605. Because a determination of this issue will require a careful study of the application of tribal laws, and tribal court decisions, the district court should have stayed its hand until after the Colville Tribal Courts have the opportunity to resolve the question. *See National Farmers Union*, 471 U.S. at 856, 105 S.Ct. at 2454. The district court abused its discretion in dismissing this action on the ground of sovereign immunity.

## *Conclusion*

The district court properly abstained from exercising its diversity jurisdiction in this matter because colorable questions are presented in this civil action regarding whether the Colville Tribal Courts have concurrent jurisdiction over alleged tortious conduct that may have commenced on the reservation. Under such circumstances, the district court is required to abstain. Because the question whether a defendant is entitled to the protection of sovereign immunity requires an interpretation of tribal law under the facts set forth in the present record, the Colville Tribal Courts must decide that question in the first instance.

The judgment of dismissal of this action as a matter of comity is AFFIRMED. The order dismissing this action based on tribal sovereign immunity is VACATED.

O'SCANNLAIN, Circuit Judge, dissenting:

Because the majority improvidently extends the *National Farmers Union–LaPlante* abstention doctrine far beyond the scope intended by the Supreme Court, and because the record is inadequate to determine whether defendant Taylor's actions fall within the scope of tribal immunity, I respectfully dissent.

## I

### A

Talismanic invocation of tribal court jurisdiction is surely insufficient to mandate federal court abstention. Yet that is all that is present here. This is a tort action for alleged malpractice committed in Portland, Oregon. Neither party to this litigation is a member of the Colville Tribes, nor is even Native American. Indeed, the only connection to an Indian tribe is that the alleged tortfeasor, Taylor, was employed by a tribal corporation and was in Portland on his client's business when he allegedly committed the tort. The majority would close the door to the federal court whenever a suit had any connection to a tribe, no matter how removed or remote. I simply cannot read *National Farmers Union* and *LaPlante* so expansively as to require federal court abstention in this situation.

There are two fundamentals of this case that the majority seems unwilling to accept. First, Stock West is alleging a *tort*, a negligent misrepresentation in the opinion letter. Stock West's claim is *not* based on the contracts to build and operate the sawmill on the reservation. The sawmill contracts are a legal nullity and could not possibly form the basis of a cause of action; indeed, a tribal court has so held. *See Confederated Tribes of the Colville Reservation v. Stock West Inc.*, 15 Indian L.Rptr. 6019 (Colville Tribal Ct. May 2, 1988).

Nor was the transaction *underlying* the opinion letter the sawmill contracts. In fact, the sawmill contracts had been executed one year earlier. Rather, the opinion letter was prepared in connection with the loan agreement, which was entered into in Portland. Stock West's tort claim against Taylor stands independent of the sawmill contracts with the tribes.[1]

Second, the tort alleged by Stock West occurred hundreds of miles from the Colville Tribes' reservation, in Portland, Oregon. The majority apparently believes that Stock West's malpractice and misrepresentation claim may have arisen on the Colville reservation because the allegedly fraudulent opinion letter was researched and drafted on the reservation. I cannot agree. It is not malpractice to write a fraudulent letter and then discard it. Nor was there any misrepresentation until Taylor travelled to Portland, Oregon and delivered the opinion letter to Stock West at the loan closing. Under Oregon law, the *delivery* of the opinion letter is the tort. *Rice v. McAlister*, 268 Or. 125, 519 P.2d 1263, 1265 (1974). *See also Heil v. Morrison Knudsen Corp.*, 863 F.2d 546, 550 (7th Cir.1988) ("[A] tort is not wrongful conduct in the air; the arrow must hit its mark."). It is beyond peradventure, in my view, that the tort upon which Stock West's action is based occurred in Portland, when the allegedly fraudulent legal opinion was presented to Stock West. *See Cavalier Label Co. v. Polytam, Ltd.*, 687 F.Supp. 872, 879 (S.D.N.Y.1988) ("The tort of fraud is considered to be committed where the misrepresentation is uttered.").

Because the cause of action alleged by Stock West did not arise on the Colville Tribes' reservation, the Supreme Court cases announcing a doctrine of abstention for exhaustion of tribal remedies, *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) and *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10

---

**1.** Interestingly, the tribal corporations expressly waived sovereign immunity from suit in any court of competent jurisdiction under both the sawmill contracts, *see Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873

F.2d 1221, 1224 n. 6 (9th Cir.1989), and the loan agreement. Presumably, such waiver extends to Mr. Taylor as attorney for the tribal corporations which the Colville Tribal court will honor if it now assumes jurisdiction in this case.

(1987), and the cases in this circuit following them, simply do not apply here. In both *National Farmers Union* and *LaPlante* it was undisputed that the transaction or occurrence underlying the plaintiff's claim occurred within the boundaries of a reservation. To extend the extraordinary doctrine of abstention to a claim based on an occurrence that happened off the reservation is, in my view, unwarranted.

In *National Farmers Union*, the suit arose out of a motorcycle-pedestrian accident that occurred in a school parking lot "located on land owned by the State within the boundaries of the Crow Indian Reservation." *National Farmers Union*, 471 U.S. at 847, 105 S.Ct. at 2449. The pedestrian sued the school and obtained a default judgment in tribal court. *Id.* at 847–48, 105 S.Ct. at 2449. The school (and its insurer) then sought a temporary restraining order in federal court to prevent the issuance of a writ of execution against school property. *Id.* Because the underlying incident occurred on the reservation, the existence of civil tribal court jurisdiction over the school and its insurer—non-Indian parties—seemed likely, and the Court held that the determination of whether jurisdiction existed "should be conducted in the first instance in the Tribal Court itself." *Id.* at 856, 105 S.Ct. at 2454. Nowhere did the Court suggest that the bare assertion of tribal jurisdiction by one of the parties, even where the claim did not arise on the reservation, would be sufficient to require abstention by the district court.

Two years later, the Supreme Court revisited the tribal court abstention doctrine in *LaPlante*. There too, the Court pointed out that the cause of action was based on an accident that occurred "within the boundaries of the Reservation." *LaPlante*, 480 U.S. at 11, 107 S.Ct. at 974. The Court extended the abstention doctrine of *National Farmers Union*, a federal question case, to matters arising under a district court's diversity jurisdiction, *id.* at 16, 107 S.Ct. at 976, but again gave no indication that such doctrine would apply to actions that did not arise on the reservation.

This circuit too has always limited its application of the *National Farmers Union–LaPlante* abstention doctrine to causes of action that arose on an Indian reservation. *See United States v. Plainbull*, 957 F.2d 724, 725 (9th Cir.1992) (action for "trespass by [defendants'] livestock on tribal lands"); *Crawford v. Genuine Parts Co.*, 947 F.2d 1405, 1406 (9th Cir.1991) ("action arose when an automobile accident occurred on ... the Blackfeet Indian Reservation"), *cert. denied,* —— U.S. ——, 112 S.Ct. 1174, 117 L.Ed.2d 419; *Burlington Northern R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1241 (9th Cir.1991) (action to challenge tribal ordinance that "establishe[d] 'general duties' for common carriers operating on the Crow Reservation"); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1222 (9th Cir.1989) (action to compel arbitration of contract "to construct and later manage a sawmill on the Colville reservation"); *White Mountain Apache Tribe v. Smith Plumbing Co.*, 856 F.2d 1301, 1303 (9th Cir.1988) ("The parties agree that all relevant subcontracts were entered into, and all relevant deliveries were made on the Fort Apache Indian Reservation."); *Wellman v. Chevron U.S.A, Inc.*, 815 F.2d 577, 578 (9th Cir.1987) ("suit ... concerning a contract with a non-Indian corporation for work on tribal lands"); *A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1416 (9th Cir.) ("undisputed that the transactions which form the bases for appellants' claims occurred or were commenced on tribal territory"), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986).

*National Farmers Union–LaPlante* abstention applies only to civil actions that arise on the reservation because a presumption arises that tribal courts have jurisdiction. "Tribal authority over the activities of non-Indians *on reservation lands* is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *LaPlante*, 480 U.S. at 18, 107 S.Ct. at 977 (emphasis added) (internal citations omitted). Where

the presumption of tribal jurisdiction is absent, abstention cannot be justified.

In my view, there can be no question that this suit arose off the reservation. Further, I disagree with the majority that a merely "colorable question" as to whether the suit is somehow connected to another transaction that did arise on the reservation can be sufficient to prevent a federal court from exercising its jurisdiction. Abstention comes at a high cost. It deprives the plaintiff of his statutory entitlement to choose a federal court as his forum. Moreover, it ordinarily delays the final resolution of the case, and increases the costs of litigation. *See England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440 (1964) (acknowledging the "delay and expense to which application of the abstention doctrine inevitably gives rise"). "The Supreme Court has stated that the doctrine of abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Plainbull*, 957 F.2d at 727 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). The fact that there may be some question that Stock West's suit may be remotely related to a previous transaction that did occur on the reservation cannot be sufficient to abrogate this duty.

### B

That Taylor was employed by tribal corporations as attorney when he committed the alleged tort does not change the result. Taylor was not executing tribal policy when he rendered the opinion letter, but rather simply complying with subsection 4.2.18 of the loan agreement, which required the tribal corporations, as borrowers, to "deliver[ ] to [the] Bank the opinion of Borrower's counsel." Although Taylor was the senior attorney in the Reservation Attorney's office, there is no evidence in the record that he participated in tribal governance or held a policy-making position in tribal government akin to the role an attorney general plays in state or federal government. Nor is Taylor even a member of the Colville Tribes.

In any event, Taylor is not being sued in his role as senior attorney in the Reservation Attorney's office, or even as counsel to the tribal corporations. Taylor is being sued for violating his duties to third parties as a member of the Washington bar, and his attorney-client relationship with the tribal corporations is not at issue. The Colville Tribes are not a party to this suit. Stock West does not challenge tribal actions or policies, or seek damages from the Tribes. However this suit comes out, the Tribes cannot be liable to judgment.

Thus, the only connection between this suit and Taylor's employer, the tribal corporations, is that Taylor was travelling on tribal corporation business when the tort allegedly was committed in downtown Portland, Oregon. Surely if Taylor had negligently hit someone with a Tribe-owned car in Portland while driving to his meeting, abstention would not be mandated (even if the Colville Tribal court asserted jurisdiction) if the injured party brought suit in federal court in Portland. The negligent tort alleged here is in substance no different.

Regardless of who his client is, Taylor has certain independent duties as a member of the state bar, and it is these duties he is alleged to have violated. The identity of Taylor's employer or client is immaterial in an action of this kind since the alleged tort occurred off the reservation. Under these circumstances, *National Farmers Union–LaPlante* abstention simply does not apply.

### II

The district court denied discovery on the question of Taylor's alleged immunity. The issue is far from clear. "[W]hen tribal officials act in their official capacity and within the scope of their authority, they are immune." *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir.1991). Whether Taylor is a "tribal official," and if so whether the ren-

dering of a negligent legal opinion as part of a commercial transaction is within his official capacity and the scope of his authority, cannot be determined on this record. I would remand for further discovery.

I cannot agree with the majority that the district court erred in even considering the question of sovereign immunity. While it cannot be gainsaid that tribal courts are best qualified to interpret tribal law, tribal official immunity is governed by federal law. Both before and after development of the *National Farmers Union–LaPlante* abstention doctrine, this court has had many occasions to consider whether tribal immunity extends to individual tribal officials. *See Imperial Granite*, 940 F.2d at 1271–72; *Burlington Northern R.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 901–02 (9th Cir.), *petition for cert. filed*, 60 U.S.L.W. 3294 (Oct. 2, 1991); *Evans v. McKay*, 869 F.2d 1341, 1348 n. 9 (9th Cir.1989); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479–80 (9th Cir.1985); *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1322 (9th Cir.1983), *cert. denied*, 467 U.S. 1214, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984); *Davis v. Littell*, 398 F.2d 83, 84–85 (9th Cir.1968), *cert. denied*, 393 U.S. 1018, 89 S.Ct. 621, 21 L.Ed.2d 562 (1969). In none of these cases did we hold that the district court was barred from addressing the question of tribal official immunity. Hence, I would permit the district court to consider whether tribal immunity extends to Taylor's actions here.

Accordingly, I respectfully dissent.