**MIDSTATES EXCAVATING, INC.,**
**Plaintiff and Appellee,**

v.

**FARMERS AND MERCHANTS BANK & TRUST OF WATERTOWN,**
**Defendant and Appellant.**

**WATER PRODUCTS COMPANY OF SOUTH DAKOTA, a South Dakota Corporation, Plaintiff and Appellee,**

v.

**FARMERS AND MERCHANTS BANK & TRUST OF WATERTOWN,**
**Defendant and Appellant.**

Nos. 15400, 15401, 15426 and 15430.

Supreme Court of South Dakota.

Argued March 23, 1987.

Decided Aug. 5, 1987.

Rehearing Denied Sept. 9, 1987.

---

Scott Sumner of Banks, Johnson, Monserud, Johnson, Colbath & Huffman, Rapid City, for plaintiff and appellee Midstates Excavating, Inc.

Robert L. Thomas of May, Johnson, Doyle & Becker, Sioux Falls, for plaintiff and appellee Water Products Co. of South Dakota.

Alan L. Austin and Arthur M. Hopper of Austin, Hinderaker, Hackett & Hopper, Watertown, for defendant and appellant.

MILLER, Justice.

This action, premised on letters of credit, centers around a forced-main sewer system project located on Indian tribal property near Wagner, Charles Mix County, South Dakota. The trial court enforced the letters of credit. We affirm.

## PARTIES

Appellant Farmers and Merchants Bank & Trust of Watertown, South Dakota (Bank), issued letters of credit in lieu of a payment and performance bond on behalf of Cho-Mid Construction (Cho-Mid).

Appellee Water Products Company of South Dakota (Water Products) is an unpaid supplier to Cho-Mid to the extent of $19,891.40. Appellee Midstates Excavating, Inc. (Midstates) is also an unpaid supplier to Cho-Mid to the extent of $30,869.48.

Cho-Mid is the subcontractor under the Yankton Sioux Tribe (Tribe). It was hired to perform the construction work on the sewer installation project. Cho-Mid's owners are Leonard "Sonny" Hare, Jr. (Hare) and Rick Brownlee (Brownlee) as partners.

Tribe is a body politic which was the prime contractor under a contract with the United States Department of Health, Education and Welfare through its Indian Health Service (IHS) for the sewer installation project. Tribe contracted with Cho-Mid to perform all the work on the project.

## FACTS

In the winter of 1980–81, Hare, a member of Tribe, became aware of various projects proposed by IHS on tribal properties in South Dakota. In 1981, he contacted Tribe in an attempt to persuade them to do this project and others on a "sole-source basis" under which Tribe would contract directly with the U.S. Government to perform the work. During this period of time Hare met Brownlee, who was in the sewer construction business. They discussed the possibility of forming a partnership to do the work on the project near Wagner and ultimately established the partnership known as Cho-Mid.

In the meantime, Tribe, through appropriate governmental processes, obtained approval from IHS for the project to be completed on a sole-source basis. Tribe and IHS entered into a contract for the construction of the project. Tribe then subcontracted with Cho-Mid to do one hundred percent of the work, with Tribe receiving ten percent of the contract proceeds for its administrative costs.

Since the construction contract involved IHS and Tribe, it was determined to be necessary for Cho-Mid to furnish payment and performance bonds. Because of the marginal financial status of Hare, Brownlee, and Cho-Mid, they were unable to secure such bonds in the normal course of business. IHS, however, advised Tribe that letters of credit could be used in lieu of the bonds.

Pursuant to negotiations between Bank, Cho-Mid, and Tribe, Bank issued three letters of credit. (The trial court specifically found that these letters of credit were issued in lieu of a payment and performance bond. This finding has not been appealed by Bank.) The first two letters of credit did not provide that they were irrevocable as required by IHS, and therefore a third one was issued, dated May 27, 1981, which read as follows:

Yankton Sioux Tribe

Rural Route 3

Wagner, South Dakota

Dear Sir:

We hereby issue a Letter of Credit to Cho-Mid Construction. This Letter of Credit will be issued pertaining to Project RFP–81–13. This Letter of Credit to be in the amount of $149,800.00 which represents payment in full of the above mentioned project. This Letter contingent upon your letter of April 21, 1981 confirming that Farmers and Merchants Bank & Trust of Watertown will directly receive the funds from this project.

This Irrevocable Letter of credit will remain in effect until the completion of the above mentioned project.

Sincerely:

/s/ William M. Hanten

Vice President

Under the negotiations, it was agreed that Bank would advance the funds to Cho-Mid conditioned upon an assignment to Bank by Tribe of funds received from IHS. An IHS representative instructed Bank to establish an operating level of credit for Cho-Mid to assure payment to suppliers on the project.

Cho-Mid commenced construction on the project, which included ordering supplies. However, Cho-Mid was unable to complete performance. Both Hare and Brownlee filed in bankruptcy (no payments to suppliers on this project were made from the bankruptcy estates). Bank, which had received various proceeds under the contract, paid $4,960.00 to suppliers but, from the remaining funds, Midstates and Water Products had unpaid claims in the amounts set forth above. (There were other unpaid suppliers to the extent of approximately $21,000.00, however, they are not parties to this action.)

Both Water Products and Midstates brought this suit in the circuit court in and for Codington County, South Dakota, against both Cho-Mid and Bank. At no time did Bank move to have this case removed to the federal district court. Rather, Bank chose only to object to circuit court jurisdiction. The actions against Bank were severed from those against Cho-Mid and ultimately were consolidated for trial.

The circuit court entered money judgments in favor of Midstates in the amount of $57,125.49 and in favor of Water Products in the amount of $36,322.36, both including prejudgment interest. Bank has appealed. We affirm.

## ISSUES

In this appeal, Bank argues (1) that this action is within the exclusive jurisdiction of the federal courts since it involves a suit on a letter of credit in lieu of a payment bond

required under the Miller Act (40 U.S.C.A. 270a–270d); (2) that even if not within the sole jurisdiction of the federal courts, the suit needed to be brought in the name of Tribe in Charles Mix County, South Dakota; (3) that the letters of credit did not entitle Cho-Mid's suppliers to sue Bank; and (4) that the total amount of the recovery cannot exceed the face amount of the letters of credit.

Water Products and Midstates have filed notices of review, arguing that, in the event we determine they are not entitled to recover under the letters of credit, we should reverse the trial court's denial of their proposed findings of fact and conclusions of law regarding their claims of negligent misrepresentation, misrepresentation, and negligence. They claim that Bank paid off, on behalf of Hare and Brownlee, various personal debts and debts not related to the project out of the proceeds held by it in an amount of nearly $55,000. Because we affirm the trial court on the letters of credit issue, we need not address the issues raised by the notice of review.

## DECISION

### 1. Whether the Miller Act is Applicable.

■ Bank argues that the Miller Act (40 U.S.C. §§ 270a–270d) confers exclusive jurisdiction upon the United States District Court in all cases brought by suppliers or laborers under bonds or letters of credit required by the Act. They are correct. That section provides in salient part:

Before any contract, exceeding $25,000 in amount, for the construction—or public work of the *United States* is awarded to any person such person shall furnish *to the United States* the following bonds.... (Emphasis supplied.)

However, 25 U.S.C. § 450j provides in part:

Contracts with tribal organizations ... shall be in accordance with all Federal contracting laws and regulations except ... and *need not conform with the provisions of sections 270a and 270d of Title 40....* (Emphasis supplied.)

Reading the foregoing congressional acts, together with the appropriate and binding regulations found at 41 CFR §§ 3–4.6001, 3–4.6008, 1–10.201, and 1–10.204-2, it becomes clear that the entire federal scheme removes contracts with tribes from the Miller Act irrespective of the fact that the money source is federal funds.

This action fails to come within the realm of a Miller Act bond for additional reasons. Under § 270a, "contractors" are required to furnish bonds to the "United States." Here, the letters of credit were furnished by the subcontractor (Cho-Mid), to the Yankton Sioux Tribe, not the United States. Hence, the requirements for a Miller Act bond are lacking.

In light of the above analysis, the trial court properly held that it had jurisdiction to hear and determine this matter. *United States ex rel. Hillsdale Rock Co. v. Cortelyou & Cole, Inc.*, 581 F.2d 239 (9th Cir.1978); *Fidelity & Deposit Company of Maryland v. Harris*, 360 F.2d 402 (9th Cir.1966); *United States ex rel. Miller v. Mattingly Bridge Co.*, 344 F.Supp. 459 (W.D.Ky.1972); and *United States ex rel. West Pacific Sales Co. v. Harder Industrial Contractors, Inc.*, 225 F.Supp. 699 (D.Or.1963).

### 2. Whether the Suppliers Were Required to Bring Suit in Charles Mix County, South Dakota.

Bank urges that if it does not prevail on issue 1, any state court action must be brought in the name of the Tribe in Charles Mix County, South Dakota (the place of the construction project), pursuant to SDCL 5–21–6.*

Appellant's reliance on SDCL ch. 5–21 is misplaced. That chapter applies to performance bonds for public improvement contracts. Although "public improvement" is not defined in SDCL ch. 5–21, that term is defined in a companion chapter, SDCL ch. 5–18 (interestingly, both chapters have their genesis in Chapter 300 of the 1939 Session Laws). SDCL 5–18–1(2) defines

"public improvement" as "the cost of which is payable from taxes or other funds under the control of the public corporation and also local improvements for which special assessments are to be levied." The term "public corporation" is defined by SDCL 5–18–1(1) as embracing "the state and all counties, cities, towns, public school corporations and all officers, boards or commissions empowered by law to enter into contracts for the construction of public improvements."

Therefore, it is clear that SDCL ch. 5–21 applies only to the State of South Dakota and its political subdivisions and not to Indian tribal governments. The action was properly venued in Codington County, South Dakota.

### 3. Whether the Suppliers are Entitled to Sue Under the Letter of Credit.

Bank argues that since the letters of credit were issued to Tribe, the suppliers of Tribe's subcontractor are not entitled to sue thereon. Furthermore, Bank states that the letters of credit were never issued by it to the suppliers nor did the suppliers receive an assignment of the right to receive proceeds under the letters of credit.

We find this argument to be without merit. These letters of credit were admittedly ambiguous. However, the trial court properly received evidence to explain the ambiguities. *Subsurfco, Inc. v. B–Y Water Dist.*, 337 N.W.2d 448 (S.D.1983); *Jensen v. Pure Plant Food Int'l, Ltd.*, 274 N.W.2d 261 (S.D.1979).

It is abundantly clear that the sole purpose for requiring the letters of credit was to replace the payment bond. This fact was found by the court and, as earlier stated, was not appealed by Bank. The obvious beneficiaries of the letters of credit were Midstates and Water Products and other suppliers. *Thompson Yards, Inc. v. Van Nice*, 59 S.D. 306, 239 N.W. 753 (1931). Even though not named as a beneficiary, Midstates and Water Products have

---

\* Bank made no demand for change of venue and arguably has waived its right to object under SDCL 15–5–10. Further, it did not object under SDCL 15–6–19 and –21 to the name of the party plaintiff; nor did it object to the alleged misjoinder of parties under SDCL 15–6–21.

standing to maintain an action against Bank as the issuer of the letters of credit. *Beckman Cotton Co. v. First Nat'l Bank,* 666 F.2d 181 (5th Cir.1982).

#### 4. Whether the Recovery Can Exceed the Face Amount of the Letter of Credit.

■ Bank complains that the recovery, with prejudgment interest, was more than the face amount of the letter of credit. In its brief, Bank's counsel agreed that prejudgment interest was appropriate up to the amount of the payment bond or letter of credit in lieu thereof, assuming they did not prevail on the other issues.

This issue was never presented to the trial court. We will not consider matters not properly raised before. *Mayrose v. Fendrich,* 347 N.W.2d 585 (S.D.1984); *Weaver v. Boortz,* 301 N.W.2d 673 (S.D. 1981); *Stauffacher v. Brother,* 67 S.D. 314, 292 N.W. 432 (1940).

Affirmed.

WUEST, C.J., and MORGAN, J., concur.

SABERS, J., concurs in part and concurs in result.

HENDERSON, J., disqualified.

SABERS, Justice (concurring in part and concurring in result in part).

I concur except as to issue 4, where I concur in the result. Under issue 4, Bank's liability may have been limited to the face amount of the letter of credit if Bank had paid upon demand. Bank failed to do so and is liable for principal plus prejudgment interest on principal from October 1, 1981, even if payment exceeds the cap or face amount of the letter of credit. SDCL 21-1-11, SDCL 57A-5-115, *Bossier Bank & Trust Co. v. Union Planters Nat'l Bk.,* 550 F.2d 1077 (6th Cir.1977).