55 F.3d 1491
 The UNITED STATES FOR the USE AND BENEFIT OF GENERAL ROCK &
SAND CORPORATION, an Arizona corporation,
Plaintiff-Appellant,
v.
CHUSKA DEVELOPMENT CORPORATION, a New Mexico corporation;
Perry Construction, Inc., a Utah corporation; Zions First
National Bank, a National Banking Association; Kelly
Fischer and Jane Doe Fischer, husband and wife; Carl
Broadbent and Jane Doe Broadbent, husband and wife; Leo
Pledger and Jane Doe Pledger, husband and wife, dba
Construction Co-op., Defendants-Appellees.
 No. 94-4106.
 United States Court of Appeals,
Tenth Circuit.
 May 19, 1995.
 
 Kevin John Witasick and William C. Knoche, Kevin John Witasick & Associates, Phoenix, AZ, for plaintiff-appellant.
 Jesse C. Trentadue and Dahnelle Burton, Suitter Axland & Hanson, Salt Lake City, UT, for defendants-appellees Chuska Development Corp. and Perry Const., Inc.
 T. Richard Davis, Callister Nebeker & McCullough, Salt Lake City, UT, for defendant-appellee Zions First National Bank.
 Before HENRY, McKAY, and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff General Rock & Sand Corp. brought suit to recover sums allegedly due for labor and materials it had furnished as a subcontractor on a Navajo reservation housing project. The complaint's stated basis for jurisdiction was the Miller Act, 40 U.S.C. Secs. 270a-270d. From the sparse record before us, it appears the Navajo Housing Authority (NHA), an agency of the Navajo Nation, refused to certify some of plaintiff's work, a condition for release of funds under the letter of credit provided to NHA for the project by defendant Zions First National Bank (Zions). The letter of credit was issued on the account of Perry Construction Company, Inc. (Perry). Perry was the partner or agent of Chuska Development Corporation (Chuska), the general contractor on the project. Named defendants in the suit were Chuska, Perry, Zions, and several individuals doing business as Construction Co-Op--another subcontractor on the project to whom plaintiff supplied materials. No attempt was made to name either NHA or the Navajo Nation as a defendant.
 
 
 2
 Responding to defendants' joint motion to dismiss under Fed.R.Civ.P. 12(b)(1) & (6), the district court issued a brief order stating that "Plaintiff's Complaint in this matter is hereby dismissed on the grounds that this Court lacks jurisdiction to hear this matter, and defers this mat[t]er to the tribal court of the Navajo Nation." App. at A-85. Plaintiff timely appealed.[1]
 
 
 3
 A federal action may be abated or dismissed without prejudice to enable pursuit of tribal court remedies. National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 857, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985). But because the exhaustion rule is one of comity and not jurisdictional limitation, dismissal of such an action for lack of subject matter jurisdiction would be inappropriate. Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 19-20, 107 S.Ct. 971, 978-79, 94 L.Ed.2d 10 (1987). Thus, we read the district court's dismissal order as one for lack of subject matter jurisdiction over the claims asserted, and its reference to deferring to the Navajo tribal courts as gratuitous.
 
 
 4
 We review the question of federal subject matter jurisdiction de novo. Redmon ex rel. Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir.1991). If the case does not clear that threshold, any issue as to whether the claims asserted should have been exhausted first in the tribal courts is academic. See Stock West Corp. v. Taylor, 964 F.2d 912, 917 (9th Cir.1992) (in banc) (holding court "must resolve this dispute [over diversity jurisdiction] before we can consider the [tribal exhaustion] issues raised in this appeal ... [, because] [i]f the district court did not have subject matter jurisdiction, it lacked the power to enter an abstention order"). Because, as explained below, we agree with the district court's dismissal of this action on jurisdictional grounds, we affirm without reaching the issue of tribal court exhaustion.[2]
 
 
 5
 * Plaintiff contends that it properly brought suit in federal court to recover on the Zions letter of credit pursuant to the substantive and jurisdictional provisions of the Miller Act. The Miller Act directs that contractors "shall furnish to the United States" performance and payment bonds in connection with "any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States." 40 U.S.C. Sec. 270a(a). The payment bond is intended "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract." Id. Sec. 270a(a)(2). In furtherance of this objective, the Act affords these suppliers "the right to sue on [the] payment bond for the amount ... unpaid at the time of institution of such suit," id. Sec. 270b(a), and grants the federal district courts exclusive jurisdiction over such actions, id. Sec. 270b(b).
 
 
 6
 To establish jurisdiction under the Miller Act, plaintiff must convince us that (1) the letter of credit qualifies as the "payment bond" within the meaning of the Act, (2) the letter issued here expressly on behalf of NHA was "furnish[ed] to the United States," and (3) a low-income housing project owned by a tribal housing authority is a "public work of the United States." A further and more fundamental hurdle arises from statutory developments regarding the inapplicability of the Miller Act to tribal contracts generally and low-income Indian housing in particular.
 
 
 7
 The parties cite only two cases, and we have found no others, on the status of letters of credit under the Miller Act. Midstates Excavating, Inc. v. Farmers & Merchants Bank & Trust, 410 N.W.2d 190 (S.D.1987), rejected a Miller Act claim for reasons pertinent here, but not because the letter of credit sued on failed to qualify as a "bond," see id. at 194.[3] United States ex rel. Anderson v. Challinor, 620 F.Supp. 78 (D.Mont.1985), recognized the viability of a Miller Act claim premised on a letter of credit, but in doing so relied heavily on the fact that "[t]he regulation (41 C.F.R. Sec. 1-10.204-2 (1984)) under which the letter of credit was issued clearly indicates that the letter of credit is to be in lieu of the bond." Id. at 79. The cited regulation provided that "[a]ny person required to furnish a bond has the option, in lieu of furnishing surety or sureties thereon, of depositing a certified or cashier's check, a bank draft, a Post Office money order, currency, or an irrevocable letter of credit, in an amount equal to the penal sum of the bond." That regulation was revised in late 1983 to delete the letter-of-credit reference while retaining all of the other options. See 48 Fed.Reg. 42,290 (1983) (initially codified at 48 C.F.R. Sec. 28.203-2, now at 48 C.F.R. Sec. 28.204-2 (1994)).
 
 
 8
 The other questions regarding Miller Act jurisdiction turn on the central role played by NHA in the direction and funding of the housing project. It is debatable whether such a project, owned and directed by an Indian housing authority, could be deemed a "public work of the United States" under the Act. Cf. United States ex rel. Romero v. Douglas Constr. Co., 531 F.2d 478, 481-82 (10th Cir.1976) (remanding for determination whether low-rent Indian housing was "Federal project," governed by Miller Act through 42 U.S.C. Sec. 1416 (1970) (now repealed), when undeveloped record left court "unable to determine the actual relationship between [the government] and [the Indian housing authority]"). Moreover, in keeping with the transfer of authority from the federal government to Indian housing authorities under the Indian Self-Determination and Education Assistance Act (Self-Determination Act), especially its 1988 amendments, see generally S.Rep. No. 274, 100th Cong., 2d Sess. 5 (1988), reprinted in 1988 U.S.C.C.A.N. 2620, 2624, Zions issued its letter of credit expressly on behalf of NHA (although drafts drawn thereon required the written concurrence of the Department of Housing and Urban Development). As noted, the Miller Act refers to bonds furnished to the United States government. See Midstates, 410 N.W.2d at 194 (holding Miller Act inapplicable under similar circumstances because, among other reasons, "the letters of credit were furnished ... to the ... Tribe, not the United States").
 
 
 9
 The most formidable obstacle to Miller Act jurisdiction, however, is raised not by the restrictive language of the Act itself, but by exclusionary references to the Act in other legislative/administrative contexts of immediate import here. In particular, consistent with the diminished federal role in Indian organization affairs contemplated by the Self-Determination Act, at the time applicable to the instant case, 25 U.S.C. Sec. 450j(a) provided that "in the discretion of the appropriate Secretary" tribal contracts executed thereunder "may be negotiated without [federally mandated] advertising and need not conform with the provisions of sections 270a to 270d of Title 40 [i.e., the Miller Act]." Implementing this statutory exclusion of Miller Act requirements, the regulations governing Indian housing programs included their own particularized set of payment-assurance options. See 24 C.F.R. Sec. 905.170(a)(1) (1994). These clearly diverged from their Miller Act counterparts--by, for example, expressly permitting letters of credit. See id. at Sec. 905.170(a)(1)(iii) & (iv).[4] Such considerations underlie and support the primary holding in Midstates, that the present federal scheme "removes contracts with tribes from the Miller Act irrespective of the fact that the [ultimate] money source is federal funds." Midstates, 410 N.W.2d at 193-94. We have found no authority to the contrary.
 
 
 10
 Plaintiff attempts to deflect this analysis by arguing that the Miller Act exclusion in Sec. 450j was qualified by the reference to "the discretion of the appropriate Secretary." Even assuming this to be the case, so that the Secretary could intervene in an Indian housing authority project to invoke and enforce the Act's bond requirements, no such action was ever taken here. Anticipating this rejoinder, plaintiff contends that the Secretary's discretion in the matter rendered the Miller Act exclusion inoperative unless the Secretary "affirmatively waives" the Act's requirements "after making certain [unidentified] determinations." Reply Br. of Appellant at 6. This attempt to transform a reservation of administrative discretion into a compulsory formality with both substantive and procedural components lacks any case law, legislative, or regulatory support. We agree with the analysis of the Midstates decision, and hold that the Miller Act does not apply to construction projects owned and directed by Indian housing authorities acting with the autonomy conferred under the Self-Determination Act.[5]
 
 
 11
 Our holding here is limited to the reach of the Miller Act; we do not hold that federal question jurisdiction can never be asserted over payment bond disputes, even in the context of Indian housing authority projects. Under 28 U.S.C. Sec. 1352, the district courts have (nonexclusive) jurisdiction "of any action on a bond executed under any law of the United States, except matters within the jurisdiction of the Court of International Trade." This jurisdictional grant applies when a bond has been required by regulations having the force of law. See, e.g., United States ex rel. Empire Plastics Corp. v. Western Casualty & Sur. Co., 429 F.2d 905, 906 (10th Cir.1970) (bid bond required under federal procurement regulations); Adams v. Greeson, 300 F.2d 555, 557 (10th Cir.1962) (livestock dealer's bond required under agricultural regulations). Accordingly, the Ninth Circuit relied on Sec. 1352 to hold that federal question jurisdiction could be asserted over a bond action arising out of an Indian housing authority project, despite the inapplicability of the Miller Act, because the bond was issued in compliance with the regulation discussed above specifying the forms of payment-assurance required for such projects. See United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd., 750 F.2d 1422, 1424-25 (9th Cir.1985) (citing 24 C.F.R. Sec. 805.203(c), now 24 C.F.R. Sec. 905.170(a) (1994)). This alternative jurisdictional basis is of no avail here, however, as Sec. 1352 refers only to "bonds," and plaintiff, which never invoked the statute, has offered no argument for an extension of its plain terms to cover the letter of credit issued by Zions.
 
 II
 
 12
 Although the complaint refers only to federal question jurisdiction, on appeal plaintiff contends that the presence of diversity jurisdiction is also apparent from the face of its pleading. "The party seeking the exercise of jurisdiction in his favor 'must allege in his pleading the facts essential to show jurisdiction.' " Penteco Corp. v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir.1991) (quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). For purposes of diversity, these facts are that "the matter in controversy exceeds the sum or value of $50,000 ... and is between ... citizens of different States." 28 U.S.C. Sec. 1332(a). Further, "[w]hen a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for each defendant or face dismissal." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989).
 
 
 13
 The complaint identifies plaintiff as "an Arizona corporation," and goes on to state that the individual defendants "are all residents of Arizona and/or Utah," App. at A-2. Assuming the reference to residency is the same as a reference to citizenship, plaintiff has not shown it is a citizen of a different state than the individual defendants.
 
 
 14
 Plaintiff attempts to overcome the pleading deficiency by arguing that the individual defendants "were never served ..., [which is] the determinative fact which [defendants] do[ ] not dispute." Reply Br. of Appellant at 3. Plaintiff also notes in this vein that the 120-day period for service allotted by Fed.R.Civ.P. 4(m) (formerly Rule 4(j)) has expired, so that if it now tried to serve the individual defendants, "the Court would have to dismiss this action as to those individuals." Reply Br. of Appellant at 3-4. Actually, dismissal is not mandatory under either version of Rule 4, both of which provide a "good cause" exception to the time limit imposed. In any event, this court rejected an essentially identical argument in Oppenheim v. Sterling, 368 F.2d 516 (10th Cir.1966), cert. denied, 386 U.S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441 (1967), holding that "in the absence of [actual] dismissals, [diversity] jurisdiction must be determined from the face of the pleading and not from returns of service of process or lack thereof," id. at 518.
 
 
 15
 On the other hand, we recognize that both the district court and this court may consider the voluntary dismissal of nondiverse defendants as a means of preserving diversity. See Newman-Green, 490 U.S. at 832, 837, 109 S.Ct. at 2222-23, 2225; Penteco Corp., 929 F.2d at 1523; Tuck v. United Servs. Auto. Ass'n, 859 F.2d 842, 845 (10th Cir.1988), cert. denied, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989). However, plaintiff has never invoked this principle to request the dismissal of the individual defendants in question, much less demonstrated the prerequisites for such discretionary relief, i.e., that these defendants are dispensable and that their dismissal at this stage would not prejudice any of the parties involved.[6] See Newman-Green, 490 U.S. at 837, 109 S.Ct. at 2225 (also "emphasiz[ing]" that "the authority to dismiss a dispensable nondiverse party ... should be exercised sparingly").
 
 
 16
 The facts presented here are strikingly similar to those summarized in Oppenheim:
 
 
 17
 The amended complaint ... shows that plaintiffs individually were citizens of the State of New York and that [two of] the defendants ... were also citizens of the State of New York.
 
 
 18
 Appellants now say that these were unnecessary parties, that they were not served and therefore that their presence should have been disregarded in ruling upon the question of jurisdiction.... Parties of course may be dropped in order to achieve the requisite diversity of citizenship if their presence is not essential to a just and meaningful adjudication. But, in the absence of such dismissals, jurisdiction must be determined from the face of the pleading and not from returns of service of process or lack thereof. There was no motion to drop any party.... The intent of the pleader to present a nondiversity case was ... confirmed [by retention of allegations reflecting common citizenship between plaintiffs and some defendants]. We cannot say that the trial court erred in determining that diversity jurisdiction did not exist.
 
 
 19
 Oppenheim, 368 F.2d at 518 (footnote and citation omitted). Like Oppenheim, this is not a case in which the plaintiff was surprised by factual or legal developments undermining diversity jurisdiction with respect to a party initially pleaded as diverse. Cf., e.g., Penteco Corp., 929 F.2d at 1522-23; Tuck, 859 F.2d at 845; Jett v. Phillips & Assocs., 439 F.2d 987, 989-90 (10th Cir.1971). Under the circumstances, we follow Oppenheim and decline to recast plaintiff's cause of action to create a diversity jurisdiction that was never pleaded.
 
 
 20
 This action does not involve a federal question or diversity of citizenship. We therefore affirm the district court's order of dismissal for lack of federal subject matter jurisdiction without reaching the analytically subsequent question of tribal court exhaustion.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 We express no opinion on whether this dispute between non-Indian entities, but involving work on a project on tribal land, is one requiring the parties to litigate in tribal court. There seem to be only a few cases that have directly faced the issue. See Stock West Corp. v. Taylor, 942 F.2d 655 (9th Cir.1991), rev'd on reh'g, 964 F.2d 912 (9th Cir.1992) (in banc); Tom's Amusement Co. v. Cuthbertson, 816 F.Supp. 403 (W.D.N.C.1993)
 
 
 [3]
 Preliminary language in the case suggests that a letter of credit might be treated as a Miller Act bond. "[Defendant] argues that the Miller Act confers exclusive jurisdiction upon the United States District Court in all cases brought by suppliers or laborers under bonds or letters of credit required by the Act. They are correct." Midstates, 410 N.W.2d at 193 (citation omitted)
 
 
 [4]
 We also note in this connection that the statute arguably applying Miller Act requirements to the Indian housing project in Douglas Constr. Co., 531 F.2d 478, discussed in text, was later replaced with a provision omitting the reference to the Miller Act (but maintaining its predecessor's imposition of related Davis-Bacon Act wage requirements). Compare 42 U.S.C. Sec. 1416(1) (1970) with 42 U.S.C. Sec. 1437j(a) (1988)
 
 
 [5]
 This conclusion is underscored strongly by the 1994 amendment to 25 U.S.C. Sec. 450j(a) to make it read, in new subsection (1), as follows: "Notwithstanding any other provision of law, subject to paragraph (3) [certain provisions of 41 U.S.C. Sec. 401 et seq.], the contracts ... entered into with tribal organizations ... shall not be subject to Federal contracting ... laws (including any regulations), except to the extent that such laws expressly apply to Indian tribes." Enacted by Pub.L. No. 103-413, Sec. 102(10), 108 Stat. 4250, 4253 (1994)
 
 
 [6]
 Count One of the complaint is based on a $22,967.88 debt the individual defendants d/b/a Construction Co-Op allegedly owed plaintiff for materials it furnished Construction Co-Op in its capacity as a subcontractor on the project. Count Two asserts a claim for materials and labor furnished the general contractor, Chuska. Although plaintiff had a separate contract with Chuska, that count's relationship to Construction Co-Op, if any, is unclear. The joint motion to dismiss asserts "[a]ll materials delivered to the Project were ordered by CO-OP." App. at A-44