FILED
United States Court of Appeals
Tenth Circuit

July 8, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAVENSWOOD INVESTMENT
COMPANY, L.P.; RAVENSWOOD
INVESTMENTS III, L.P.,

        Plaintiffs - Appellants,

    v.

AVALON CORRECTIONAL
SERVICES; TIFFANY SMITH;
DONALD E. SMITH,

        Defendants - Appellees.

No. 10-6190

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:09-CV-00070-R)**

James Sandnes, Boundas, Skarzynski, Walsh & Black, LLC, New York, NY (Leif
E. Swedlow, Andrews Davis, Oklahoma City, OK, with him on the briefs), for
Plaintiffs-Appellants.

James M. Chaney, Kirk & Chaney, Oklahoma City, OK (James A. Kirk and
Matthew L. Standard, Kirk & Chaney, Oklahoma City, OK; Judy Hamilton Morse,
Susan E. Huntsman and Brandee L. Bruening, Crowe & Dunlevy, Oklahoma City,
OK, with him on the brief), for Defendants-Appellees.

Before **MURPHY**, **GORSUCH**, and **MATHESON**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. Introduction

This case was brought in federal court based on diversity jurisdiction under 28 U.S.C. § 1332. After the district court entered interim orders dismissing many claims, entering summary judgment on another, and resolving various discovery disputes, the parties discovered complete diversity never existed and the court lacked subject matter jurisdiction. Rather than dismiss the case in its entirety for lack of jurisdiction, the district court severed some previously decided claims between diverse parties and made final their dispositions. The court dismissed the remainder of the claims. Although dismissing a nondiverse party is an available procedure for curing a lack of complete diversity in some circumstances, the district court's order here failed to create complete diversity. Exercising jurisdiction under 28 U.S.C. § 1291, the district court's order is **REVERSED** and the case is **REMANDED** for further proceedings.

## II. Background

Avalon Correctional Services, Inc., ("Avalon"), a Nevada corporation with its principal place of business in Oklahoma, operates for-profit correctional facilities. Ravenswood Investment Company ("RIC") and Ravenswood Investments III ("RIII"), shareholders of Avalon, are both New York limited partnerships. As alleged by RIC and RIII, in 2005, Avalon deregistered with the Securities and Exchange Commission and ceased filing financial reports with the agency. Over a period of time from 2006 to 2008, Donald Smith, Chief Executive

-2-

Officer, sole director, and controlling shareholder of Avalon, is alleged to have breached his fiduciary duty by engaging in considerable self-dealing to the detriment of non-controlling shareholders, including RIC and RIII.

In 2008, RIC and RIII demanded inspection of Avalon's books and records, asserting a right provided to shareholders under Oklahoma law. Rather than supply the requested information, Avalon sued RIC and RIII in federal court seeking a declaration that Avalon, as a Nevada corporation, was not subject to Oklahoma law with respect to shareholders' rights to inspect company records. In its complaint, Avalon alleged diversity of citizenship as a basis for jurisdiction. RIC and RIII, in turn, brought counterclaims against Avalon and third-party claims against Donald Smith, also asserting federal jurisdiction based on diversity. The counterclaims and third-party claims included direct, derivative, and class action claims for damages arising out of various breaches of fiduciary duty and unjust enrichment; direct, derivative, and class action claims for injunctive relief requiring Avalon to hold an election for directors; and direct claims for injunctive relief requiring Avalon to submit to the inspection of its records.

Avalon and Donald Smith filed a motion to dismiss some of RIC's and RIII's claims. They challenged the direct and class action claims for damages and for an injunction requiring a directors' election, arguing they were derivative claims that cannot be brought as direct claims and that the class action

requirements of Fed. R. Civ. P. 23 could not be met. Avalon and Donald Smith also moved to dismiss RIC's and RIII's claim for a right to inspect Avalon's books, arguing corporate law of Nevada, not Oklahoma, applies. RIC and RIII filed a motion for partial summary judgment on their claims relating to their right to inspect Avalon's financial records, requiring Avalon to hold a directors' election, and requesting various other injunctive and declaratory relief related to Donald Smith's alleged breaches of fiduciary duty.

The district court granted Avalon's and Smith's motion to dismiss RIC's and RIII's direct and class action claims for damages and for an injunction requiring a directors' election, concluding those claims can only be advanced as derivative claims, but denied the motion to dismiss the claim for a right to inspect Avalon's books, concluding Oklahoma corporate law applied to that claim. The district court then granted RIC's and RIII's motion for summary judgment on the inspection claim and denied their motion in all other respects.

Because the right to inspect Avalon's financial records was the subject of the only claim advanced by Avalon, the original plaintiff, and that issue was disposed of by partial grant of summary judgment to RIC and RIII, the district court then granted an unopposed motion to realign the parties. RIC and RIII were designated as plaintiffs, and Avalon and Donald Smith were designated as defendants.

RIC and RIII then filed an amended complaint which included claims against Donald Smith's wife, Tiffany Smith, and some additional claims against Donald Smith and Avalon. Once again, RIC and RIII alleged jurisdiction based on diversity of citizenship. Avalon and Donald Smith again moved to dismiss a portion of the claims, including all new direct and class action claims, certain of the derivative claims, and the re-alleged claim for inspection of Avalon's records, and Tiffany Smith separately moved to dismiss some of the claims against her. The district court granted both motions in their entirety, except as to the inspection claim.

Discovery on the remaining derivative claims followed. In 2010, during the discovery process, the Smiths' separate counsel for the first time questioned the existence of complete diversity in the case and requested disclosure of the identities of all RIC and RIII partners. RIC and RIII reviewed the citizenship of their partners and found certain trusts, which held a less than two percent of the limited partnership interest in RIC, had a common trustee who had been a resident of Nevada since the inception of the case. Limited partnerships are deemed citizens of every state where any partner resides. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). Accordingly, RIC and Avalon now agree they have never been diverse from one another, because each has Nevada citizenship, and

complete diversity as required for federal jurisdiction under 28 U.S.C. § 1332(a) never existed.[1]

RIC and RIII moved for voluntary dismissal without prejudice of the entire case based on lack of jurisdiction. Avalon opposed the motion to dismiss and moved to sever the previously dismissed direct and class claims of RIC against the Smiths and of RIII against Avalon and the Smiths, and to dismiss without

---

[1]Below, the parties and the district court all agreed a trust took on the citizenship of its trustee in a diversity analysis, and no party has argued to the contrary on appeal. Unlike a situation in which both parties erroneously assert federal jurisdiction exists thereby triggering this court's sua sponte obligation to examine its own jurisdiction, there is no need to decide the propriety of the parties' agreement that diversity jurisdiction does not exist because it presents no concern a federal court will exceed its power. *See State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270-71 (10th Cir. 1998) (explaining rationale for courts' obligation to sua sponte examine subject matter jurisdiction). In any event, because the Supreme Court has held trustees suing in their own name on behalf of the trust are real parties in interest for the purposes of diversity of citizenship analysis, this court is satisfied that, at least when no party demonstrates the trustee does not "possess the 'customary powers to hold, manage, and dispose of assets for the benefit of others,'" the trustee's citizenship constitutes a citizenship of a trust that is a limited partner in a partnership. *Lenon v. St. Paul Mercury Ins.* Co., 136 F.3d 1370 (10th Cir. 1998) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980); *see also Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 201-202 (3d Cir. 2007) (surveying circuits and listing majority of circuits considering trustees' citizenship based on *Navarro*); *but see Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1338-40 (11th Cir. 2002) (holding trust's citizenship determined only by beneficiaries' citizenship), *overruled on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 89 (2006). There is no occasion in this case to decide if and under what circumstances beneficiaries' citizenship may affect a trust's citizenship for the purposes of the diversity analysis. *See, e.g.*, *Emerald Investors Trust*, 492 F.2d at 193 (concluding both trustees' and beneficiaries' citizenships would be counted in determining a trust's citizenship).

-6-

prejudice the remainder of the claims. The district court considered the expense and time invested in the case and the various prejudices to the parties. It decided:

> . . . Defendants' [Avalon and the Smiths] motion to sever is GRANTED and Avalon's claim against [RIII], the claims of [RIII] against Defendants [Avalon and the Smiths] which have already been decided by this Court and the claims of [RIC] against Tiffany Smith and Donald E. Smith which have already been decided by this Court are severed and retained herein. In all other respects, Plaintiffs' [RIC and RIII] motion for an order allowing Plaintiffs to voluntarily dismiss their claims is GRANTED, the Court being without subject matter jurisdiction over the claims of Plaintiff [RIC] against Defendant [Avalon] and finding that in the interest of judicial economy and efficiency the remainder of the unadjudicated claims should be litigated in the same forum as those over which this Court lacks jurisdiction.

RIC and RIII appeal this order, which converted the interim orders dismissing the severed claims into a final order on the merits.

## III. Discussion

Federal jurisdiction is determined based on the facts as they existed at the time the complaint was filed. *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957). When jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332(a), as is the case here, each plaintiff must be diverse from each defendant to have what is known as complete diversity. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 & n.1 (1989). There is no dispute that here, at the time the complaint was filed, Avalon, the original plaintiff, and RIC, an original defendant, each had Nevada citizenship and there was consequently no federal jurisdiction.

-7-

The time-of-filing rule has one well-established exception. A district court can dismiss a dispensable nondiverse party pursuant to Fed. R. Civ. P. 21 to cure a jurisdictional defect at any point in the litigation, including after judgment has entered. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572 (2004); *Newman-Green, Inc.*, 490 U.S. at 832; *United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). In this case, the district court understandably attempted to invoke this exception to the time-of-filing rule in fashioning its severance and dismissal order in an effort to preserve the investment of resources by the court and the parties.

The district court's order, however, ultimately failed to cure the jurisdictional defect in this case because it did not alter the composition of the parties. The district court retained jurisdiction over three sets of previously decided claims: (1) Avalon's original claim against RIII; (2) RIII's claims against Avalon and the Smiths; and (3) RIC's claims against the Smiths. Although the claims involving Avalon and RIC, the nondiverse parties, were dismissed, both Avalon and RIC remained parties in the federal case and the lack of complete diversity was not cured by the order. Jurisdiction based on diversity does not contemplate diversity of *claims*, but rather diversity of *parties*. *See* 28 U.S.C. § 1332; *Newman-Green, Inc.*, 490 U.S. at 832 ("Rule 21 invests district courts

-8-

with authority to allow a dispensable nondiverse *party* to be dropped at any time. . . ." (emphasis added)). The district court did not dismiss any party from the suit and citizens of Nevada remained on both sides of the case.

Avalon and the Smiths argue the district court effectively severed both parties and claims. They contend that, in essence, the district court created three separate cases: (1) a dismissed case comprised of the yet-to-be-decided derivative claims of RIC and RIII against Avalon and the Smiths; (2) a retained case comprised of the already decided direct and class claims between RIC and the Smiths; and (3) a retained case comprised of the already decided direct and class claims between RIII and all defendants. Severance under Rule 21, they further argue, results in "independent actions with separate judgments entered in each." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 n.8 (10th Cir. 1991). In each of the three separate cases Avalon and the Smiths contend were created, the parties are diverse from one another.

As a preliminary matter, the three-case theory advanced by Avalon and the Smiths does not account for all of the claims the order controls. It does not account for the previously decided direct and class claims of RIC against Avalon, as to which federal jurisdiction never did nor could exist and which were dismissed by the district court. It also does not account for Avalon's original claim against RIII concerning the right to inspect the books, which was retained, and the same claim against RIC, which was dismissed. It would thus seem that to

accept the multi-case theory, one would have to accept a theory involving more than three cases. In any event, the district court order does not suggest it was creating three or more cases. Rather, the court listed the three sets of claims between diverse parties and stated that those claims "are severed and retained *herein*." (emphasis added) A natural reading of the order demonstrates these claims were retained in the single, original case. The district court likewise did not take any further steps to indicate separate cases were created, such as entering separate judgments in each case.

Even if the district court had created three cases by dividing the original case, there is no authority for the proposition that creating multiple federal actions is a permissible way to cure a jurisdictional defect in a diversity case.[2] The sole recognized exception to the time-of-filing rule is when a court completely dismisses from the case a nondiverse party pursuant to Rule 21. *See, e.g.*, *Varley v. Tampax, Inc.*, 855 F.2d 696 (10th Cir. 1988) (holding district court abused its discretion in refusing to dismiss dispensable nondiverse defendants after summary judgment had been granted to diverse defendant); *Miller v. Leavenworth-Jefferson Elec. Coop, Inc.*, 653 F.2d 1378, 1383 (10th Cir. 1981) (affirming Rule 21 dismissal of a nondiverse party as proper exercise of district

---

[2]The only case cited by the parties to consider such a course of action, a district court case, rejected it for substantially the reasons this court does today. *Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 644-45 (W.D.Wis. 2000).

court's discretion), *superseded by rule on other grounds as stated in Grantham v. Ohio Cas. Co.*, 97 F.3d 434, 435 (10th Cir. 1996); *Jett v. Phillips & Assocs.*, 439 F.2d 987, 989-991 (10th Cir. 1971) (same). Attempts to create additional exceptions have been rejected. In *Grupo Dataflux*, for example, the Supreme Court rejected a claim that a lack of complete diversity resulting from the citizenship of a limited partner in a partnership was cured when the partner left the partnership. 541 U.S. at 571, 582; *see also Anderson v. Watt*, 138 U.S. 694, 707-08 (1891) (holding a lack of diversity resulting from the citizenship of one of two executors of an estate could not be cured by revocation of the executor's letters, leaving a sole executor). The Supreme Court has "adhered to the time-of-filing rule regardless of the costs it imposes." *Grupo Dataflux*, 541 U.S. at 571. It would be contrary to the principles established by the Supreme Court to create a new exception to the time-of-filing rule allowing cases to be split into multiple federal actions to achieve complete diversity in pieces of the litigation over which the court lacked subject matter jurisdiction at the outset. Such an exception would create an end-run around the longstanding rule requiring complete diversity at the time of filing.

Having concluded the district court order failed to comply with the narrow exception to the time-of-filing rule, two options remain: either dismiss the case without prejudice in its entirety for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(h), or dismiss a dispensable nondiverse party to effect

-11-

complete diversity, creating a case which could then proceed to conclusion in federal court. The Supreme Court has recognized that courts of appeals themselves have the power to dismiss a party to achieve complete diversity under Rule 21. *Newman-Green, Inc.*, 490 U.S. at 827. Nonetheless, the Court cautioned "such authority should be exercised sparingly." *Id.* at 837. Here, for the reasons explained below, the considerations are not straightforward and the prejudice and efficiency determinations are best made by the district court. *See id.* at 838 (recognizing remand is appropriate in some cases).

RIC and RIII correctly assert that only a party who is dispensable under Fed. R. Civ. P. 19 may be dismissed to achieve complete diversity. *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1371 (10th Cir. 1998). Here, the two nondiverse parties are Avalon and RIC. The parties agree Avalon cannot be dropped from the action because a corporation is an indispensable party to a derivative action by a shareholder. *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970). Whether RIC is an indispensable party is a question the district court never reached, because it did not consider the complete dismissal of any party from the action. This court has held that the fact-finding inherent in Rule 19 determinations is best left to the district court in the first instance, and the parties are therefore free to advance their arguments as to whether RIC is an indispensable party on remand to the district court. *See Davis v. United States*, 192 F.3d 951, 961 (10th Cir. 1999).

Both parties also advance arguments concerning the prejudice each will face if their respective positions are not adopted. Like a Rule 19 analysis, however, the district court is in the best position to consider the extent to which any party would be prejudiced by dismissing RIC. *See Gen. Rock & Sand Corp.*, 55 F.3d at 1496 (explaining the need for a prejudice analysis); *Tuck v. United Servs. Auto Ass'n*, 859 F.2d 842, 845-46 (10th Cir. 1988) (remanding, in light of the complexity of the posture of the case, to determine if jurisdictional defect can be cured by dismissing party). This case presents a complicated procedural history and numerous factually overlapping claims, the effect of which the district court is in the best position to consider. In addition, although nothing precludes dismissing a plaintiff to cure a jurisdictional defect, it is typically a nondiverse defendant who is dismissed. While RIC and RIII are plaintiffs by realignment, they were originally defendants, a fact that may diminish any prejudice concern surrounding the unusual nature of dismissing a plaintiff to achieve complete diversity. The district court is also free to consider whether any party bears greater fault in failing to discover the jurisdictional defect before such a substantial investment of time by the court and the parties. *See, e.g.*, *Tuck*, 859 F.2d at 846 (discussing fault of the defendant, who should have known of jurisdictional problem, in concluding fairness and judicial economy weigh in favor of dismissing nondiverse party).

Finally, although RIC and RIII moved for voluntary dismissal of all claims pursuant to Fed. R. Civ. P. 41, they did so on the basis that the court lacked jurisdiction. If the district court cures the lack of jurisdiction by dismissing RIC, the basis for RIII's previous Rule 41 motion will no longer exist. Accordingly, RIII could exercise its right to a federal forum and proceed on its remaining claims in federal court, while RIC would be free to pursue an action in state court.[3] Whether judicial economy favors such a result and any prejudice any party might suffer by proceeding in parallel actions is, again, best decided by the district court. *See Grupo Dataflux*, 541 U.S. at 572 (explaining that dropping a party under Rule 21 to achieve complete diversity is appropriate based on "'considerations of finality, efficiency, and economy'" (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 (1996)). In the event the district court concludes RIC is an indispensable party or one or more of the parties will be unfairly prejudiced by dismissing RIC, the district court must dismiss the case in its entirety for lack of jurisdiction.

---

[3]In light of this ruling, RIC and RIII's further arguments about the prejudice it suffered from the district court's conversion of its interlocutory orders into final orders on the merits need not be addressed. On remand, if RIC is dismissed as a party to the lawsuit, RIII will be able to proceed with its remaining claims and, in the ordinary course of events, the interim orders will merge in the final judgment at the conclusion of the litigation. *See AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236-37 (10th Cir. 2009).

## IV. Conclusion

For the foregoing reasons, the order of the district court is **REVERSED** and this court **REMANDS** the case to the district court for further proceedings not inconsistent with this opinion.